## JONES *v.* SALMON *et al.*

[91 South. 199  In Banc.  No. 22176.]

1. MORTGAGES. *Power to appoint substituted trustee is strictly construed.*

   A power given in a trust deed on land wherein a trustee is appointed, with authority, on condition broken, of foreclosure by sale *in pais,* with the right in the *cestui que trust* to substitute another trustee upon the happening of certain conditions named in such trust deed, is to be strictly construed against the right of substitution by such *cestui que trust,* and the appointment of a new trustee under such power cannot be made unless the terms of the power clearly and distinctly authorize the appointment in the particular event therein named.

2. MORTGAGES. *Beneficiary in trust deed may appoint new trustee, where original trustee is dead.*

   Applying such rule of strict construction to a trust deed which names a trustee, and provides that upon condition broken, if said trustee so named "should fail or refuse to act as such when thereto requested," then the *cestui que trust* may appoint another trustee, and at the time of condition broken such trustee so named in the deed of trust is dead, such *cestui que trust* has a right to appoint another trustee, because under the terms of said power the trustee named therein has failed, and the *cestui que trust* is not required to do the vain thing of requesting him to act as a condition precedent to the appointment of another trustee.

3. MORTGAGES. *Advertising longer than statute requires does not render sale void.*

   Under section 2772, Code 1906 (section 2276, Hemingway's Code), providing that lands sold under mortgages and deeds of trust by trustees shall be advertised for three consecutive weeks preceding such sale, a sale advertised for four consecutive weeks or longer, preceding the sale, is not unauthorized, and therefore a sale so advertised is legal.

4. MORTGAGES. *Amendment by trustee in deed of trust of advertisement and publishing longer than required by statute held not to render advertisement illegal.*

   Where the trustee in such trust deed advertises the land in two issues of a weekly newspaper, and then discovers that a sale thereunder cannot be legally made because such sale will not be advertised three consecutive weeks before its date, and thereupon has such advertisement changed and a deferred date fixed for the sale, and after such change

128 Miss.]                    Brief for Appellant.

such sale is advertised for more than four consecutive weeks next before it takes place, such advertisement and sale are not illegal, on the ground that such advertisement was calculated to confuse and mislead prospective bidders and others interested.

ETHRIDGE, J., and SMITH, C. J. dissenting.

APPEAL from chancery court of Tunica county.

HON. G. E. WILLIAMS, Chancellor.

Suit by Israel Jones against T. E. Salmon and others. From decree of dismissal plaintiff appeals. Affirmed.

*Arthur C. Fant,* for appellant.

There was no authority to appoint a substituted trustee under the terms of the deed of trust in the event the trustee named therein should die. The supreme court of Mississippi, in *Sharpley* v. *Plant,* 79 Miss. 190; Perry on Trusts, sec. 288; *Learned* v. *Matthews,* 40 Miss. 220; Brame & A. Dig. 820, 18 Am. & Eng. Enc. L. 837, and notes; *Sharpley* v. *Plant,* 79 Miss. 190; *Clark* v. *Wilson,* 53 Miss. 127; Hill on Trustees, 189; *Guion* v. *Pickett,* 42 Miss. 77; *Clark* v. *Wilson,* 53 Miss. 127; *Guion* v. *Pickett,* 42 Miss. 77; *Guion* v. *Pickett,* 42 Miss. 77; Perry on Trusts (6 Ed.), sec. 288.

The rule is stated in Cyc. to be as follows: "Since the power of appointment can only be exercised upon the happening of the contingency expresed in the grant the instrument granting the power should express plainly the case in which a new trustee may be appointed and should embrace every event that can render such appointment necessary, such as the neglect or refusal of the trustee to act, his death, absence from the country, wish to retire from office, or incapacity or unfitness to discharge his duties." 39 Cyc. pp. 273-274.

The case of *Guion* v. *Pickett,* 42 Miss. 77, has been cited with approval as follows: *McNeil* v. *Lee,* 79 Miss. 459; *Clark* v. *Wilson,* 53 Miss. 128; *Ready* v. *Hamm,* 46 Miss. 422, 39 Cyc., 274; Perry on Trusts, secs. 290 and 473; Loring's A Trustee's Handbook, p. 8. The sale was not ad-

vertised as required by the law of Mississippi and the deed of trust. The law of Mississippi provides as follows: "Sale of said lands shall be advertised for three consecutive weeks preceding such sale in a newspaper published in the county or if none is so published in some paper having a general circulation therein, and by posting one notice at the courthouse of the county where the land is situated for said time, and such notice and advertisement shall disclose the name of the mortgagor or mortgagors, whose property is advertised for sale. No sale of lands under a deed of trust or mortgage shall be valid, unless such sales shall have been advertised as herein provided for, regardless of any contract to the contrary. 1 Hemingway's Ann. Miss. Code (1917 Ed.), sec. 2276.

The supreme court of Mississippi, in the case of *Planters Mercantile Co.* v. *Braxton,* has held as follows: "In disposing of the present appeal, or special inquiry is to ascertain the meaning of the phrase, for three consecutive weeks preceding such sale, as employed in the statute under review. We conclude unhesitatingly, that the language of the statute requires publication to be made for the three weeks next before the day of sale, or immediately preceding the day of sale. The purpose of this mandatory provision of law is obvious. It is designed to give notice of the approaching sale to the owner of, and other parties interested in, the lands to be sold, as also to give notice to prospective bidders. If a longer period of time than one week may elapse from the date of the last advertisement, and the day of sale, it logically follows that several weeks or several months might elapse and the day of sale might be fixed so far in the future that parties in interest might overlook the sale altogether and grave injustice be done. The purpose of the statute is to give wide-spread notice to the public generally, and to have this notice fresh in the minds of parties probably interested. This interpretation of the statute is justified by the literal meaning of the language employed, and tends, we think, to the public good. It enables the statute to accomplish the very pur-

pose for which it is enacted. *Planters Mercantile Co.* v. *Braxton,* 120 Miss. 470.

See, also, the case of *Maris* v. *Lindsay* (Miss.), 87 So. 12. *Montgomery & Dulaney,* for appellees.

We will argue separately the two propositions discussed by counsel for appellant in his brief.

## I.

WAS J. D. MAGRUDER PROPERLY SUBSTITUTED AS TRUSTEE?

This whole question depends upon the interpretation of the language employed in the deed of trust, to-wit: "If from any cause R. K. Mims, the trustee above named, should fail or refuse to act as such when thereto requested, that then in that event, etc."

It is under this power that the substituted trustee is appointed, the trustee, R. K. Mims, having died before maturity of the debt; and the counsel argues in his brief for appellant that because the deed of trust does not say that the power of substitution shall be granted in the event of the death of R. K. Mims that therefore no such power existed, and the trust deed could only be foreclosed in a court of chancery. In other words, the death of that trustee took away the power of sale by a trustee at all.

No question is raised as to the validity of the original deed of trust, and counsel does not argue his allegation that this sale was for less than the value of the land, which of course, would not be material to the issue, and as said in *Jacobs* v. *McClintock,* by the supreme court of Texas, speaking through Justice BONNER: "As equity looks to the substance and not to the shadow, the defective execution of a valid power will be sustained in favor of creditors and purchasers for value, and others, not mere volunteers, when the intention of the parties clearly appears and has been substantially carried out, and when the defect complained of is a technical one, and which it may reasonably be presumed was not occasioned through fraud and did not result in legal injury to the parties interested."

Citing: 1 Story's Eq. Jur., 94-97; Id., 170-174; Washb. on R. P., 335, sec. 8.

This case of *Jacobs* v. *McClintock*, is a strong case in our favor though in that case the provision was that if Grainger should be unwilling or unable to act in carrying out the trust, then for the appointment by him of a substitute trustee. And in the event Grainger should refuse to appoint a substitute trustee, then it should be lawful for the holder of the note due and unpaid to appoint said substitute trustee.·

.The testimony shows that prior to the sale under the trust deed, Grainger, the original trustee, died without having appointed a substitute, and the beneficiary appointed him. The supreme court of Texas say in that case, in answer. to the objection to this appointment, that the trustee had not been requested, and had not indicated before his death that he was unwilling or unable to act.

In our opinion the stipulation in the deed of trust in regard to the appointment of a substitute trustee comes within that class known as directory powers, in which some degree of latitude is allowed, rather than that class known as strict powers, to be executed only under the circumstances prescribed in the instrument. Citing: Perry on Trusts, 490. Further quoting: "The death of Grainger rendered him wholly unable to act as trustee or to appoint a substitute trustee, and although there was not a technical refusal to make such appointment, yet there existed, in effect, what was equivalent to such refusal."

The evident intention of the parties, was that a sale of the property might be made through a trustee, without the formality, delay and expense of a judicial proceeding, and we are of opinion, that, substantially in the light of this intention, the contingency happened which authorized Brewster to appoint the substitute trustee. *Guion* v. *Pickett, et al.*, 42 Miss. 77; *Lusby* v. *The Railroad Company*, 73 Miss. 360; *Railroad Co.* v. *Deavaney*, in the book entitled 42 Miss. see 75 Miss. 371; *McNeil* v. *Lee*, 79 Miss. 459;

*Clark* v. *Wilson,* 53 Miss. 128; *Ready* v. *Hamm,* 46 Miss. 422.

In *McNeil* v. *Lee, supra,* the trust deed authorized the appointment of another trustee in place of Hillis if for any cause he should not be willing, present and able to execute the said trust, and *Guion* v. *Pickett, supra,* was cited with approval as holding that: "The authority to appoint a substituted trustee under a stipulation contained in a deed of trust is a strict power, and such an appointment cannot be made, except upon the happening of the precise event specified in such deed."

But here was no question as to the death of a trustee in that case, and no approval of the *dictum* as to the point now under discussion, but the supreme court in the case of *McNeil* v. *Lee, supra,* do say in the very last paragraph of the opinion by Justice TERRAL: "The intention of the parties must be made effectual, if consistent with law." See *McNeil* v. *Lee,* 79 Miss. 460.

The case of *Clark* v. *Wilson,* cited as approving the principle contended for by appellant, contains no questions as to death of the trustee. The deed of trust in that case contains this provision: "Should said second party (Mangum) fail from any cause to act herein, then said third parties (the *cestuis que trust*) may appoint in writing anyone else to execute this trust, with every power, title and right, as well as duty, touching the same." (page 127).

In *Frank* v. *Mortgage Co.,* 86 Miss. 103, it is held that the power of sale or substitution is not revoked by the death of the mortgagee.

### THE WORD "FAIL."

Counsel for appellant has cited no authority anywhere nor, we daresay, is there any, holding that where the deed of trust provides that, if the trustee fail to act, power of substitution exists in the beneficiary, that the power is not given if the trustee die. In the case at bar we may eliminate, entirely, the use of the words in the deed of trust, refuse to act, because the provision is, if from any

cause R. K. Mims, the trustee above named, should fail or refuse to act as such.

We submit that it is perfectly clear that if a man die before he executes a trust reposed in him, or before the trust matures, sufficiently that he may act he has certainly failed to act from that cause, to-wit because of his death. It may be that the reasoning of the court in Guion's case may be correct or not. This court may be of the opinion that the reasoning is better than the Texas case cited—*Jacobs* v. *McClintock, supra,* but that he has failed to act when he dies before he can act is absolutely certain.

### DEFINITION OF "FAIL."

The United States circuit court of appeals, speaking through Judge GROSSCUP, say: "Failure means both intentional and unintentional non-performance." See *Standard Oil Co. of Indiana* v. *U. S.,* 164 Fed. 391. An illegal sale is voidable but not void. See *Haggart* v. *Wilczinski,* 143 Fed. 22; Webster's Unabridged Dictionary (1921 Ed.):

1. To be wanting to fall short; to be or become deficient in any measure or degree; to cease to be furnished in the usual or expected manner, or to be altogether cut off from supply; to be lacking; to come to an end; as streams fail; crops fail. "Till Lionel's issue fails, his should not reign." Shakespeare. 2. To be affected with want; to come short; to lack, to be deficient or unprovided; used with or in, as, to fail of or in beauty. 3. To fall away; to become diminished; to become exhausted; to decline; decay; sink. "The champak odors fail like sweet thoughts in a dream.—Shelley. 4. To deteriorate in respect to vigor, activity, resources, etc., to become weaker; as a sick man fails. 5. To perish, die—used of a person. Obs. "Had the king in his last sickness failed."—Shakespeare. 6. To be found wanting with respect to an action, a duty a result, etc., to miss;—used with following infinitive. 7. "Take heed now that ye fail not to do this."—Ezra, iv., 22.

Counsel for appellant argues that the use of the words when requested are of some importance. We cannot see how this can be, because upon the death of the man the

power to request ceases or the request could not avail in the ears of the dead.

Counsel for appellant also cites the case of *Sharpley* v. *Plant,* 79 Miss. 175. This case is not in point with any question involved in the case at bar. In that case the deed of trust provided for the appointment of a substitute trustee under the hand and seal of the beneficiary, and it was held that the appointment signed by the beneficiary, not under seal, was not valid notwithstanding the abolition of seals by the Code of 1892, the court holding that the substitutionary appointment not being under seal was not authorized by the deed of trust, saying: "Counsel also cites Perry on Trust by the text in which the writer says: 'Where *cestuis que trust* were to appoint a trustee upon the refusal or neglect of the others to act, it was held that they could not appoint upon the death of one of them.' But the only authority cited to sustain this *dictum* is *Guion* v. *Pickett,* nor does the word fail appear in the text or in the citation."

We submit, therefore, that it is the manifest meaning of this trust deed in saying that if the trustee fail from any cause, that a new trustee may be appointed, to give the power to this beneficiary on the death of the trustee before maturity of the debt which is the last great failure of all.

## II.

No point is made in the bill or brief on the notice of the sale except that the trustee first advertised it for two weeks for sale on the 5th day of April, 1915. It seems that the advertisement beginning in the issue of the paper on March 19th, and running that week and on March 26th, for a sale on April 5th, would not have been sufficient time to have made the sale on April 5th; therefore it appears that in the issue of the paper of April 2, the trustee changed the date on which he would sell to May 3rd, and the advertisement was run in the paper April 2, April 9, April 16, April 23, and April 30, five times, the last, to-wit, April 30,

being the week before the sale, which was Friday before the following Monday.

Clearly this advertisement is strictly according to the statute and, also according to the terms in the deed of trust, which are the very words of the statute, section 2276 (section 2772, Code 1906). Sale of said lands shall be advertised for three consecutive weeks preceding such sale in a newspaper published in the county, or, if none is so published, in some paper having a general circulation therein, and by posting one notice at the courthouse of the county where the land is situated, for said time.

This provision is strictly complied with in the last five advertisements in which for five weeks immediately preceding the sale the notice was published and posted, as required by the section of the code. We submit, that there is nothing in the decisions of this court in the cases cited, to-wit: *Planters Mercantile Co.* v. *Braxton,* 120 Miss. 470; *Maris* v. *Lindsey,* 87 So. 12, 124 Miss. 742; which in any way makes this advertisement objectionable, the court holding that the advertisement must be run for three weeks immediately preceding sale, the last publication must be made in the last issue of the paper preceding the sale and in this instance the advertisement for sale on May 3, began and ran five weeks immediately preceding the sale, so we submit that there is nothing at all in the counsel's contention as to this advertisement. It is strictly in accordance with the decisions of our court and there is nothing really debatable in his contention, that because it was advertised two weeks before that for another day that in any manner affected the sale.

When we have complied with the statute to the very letter in the last five publications, we submit that it is idle to argue that we are required to do more. See, also, *Lake* v. *Castleman,* 116 Miss. 175.

It is equally untenable to argue that we advertised five weeks instead of four, that being five weeks immediately precednig the sale. The appellees all joined in the demurrer to the bill and the demurrer was sustained, the com-

plainant (appellant) declined to amend the bill and the same was dismissed by final decree. The complainant then appealed.

We respectfully submit that the action of the court in sustaining the demurrer, and on complainant's declining to amend, in dismissing the bill was correct, and the cause should be affirmed.

ANDERSON, J., delivered the opinion of the court.

This was a bill in chancery by the appellant, Israel Jones, against the appellees, T. E. Salmon et al., to cancel a conveyance of land made in pursuance of a power in a trust deed, and to redeem the same. Appellees' demurrer to the bill was sustained, and, appellant declining leave to amend, a decree was entered dismissing the bill, from which appellant prosecutes this appeal.

Appellant was grantor in the trust deed in question, and appellee Mrs. Scott, was the *cestui que trust* therein. After condition broken there was a foreclosure of the trust deed *in pais* through Magruder, substituted trustee therein, at which foreclosure sale the *cestui que trust,* Mrs. Scott, became the purchaser of the land involved, receiving a deed thereto in the usual form, from such substituted trustee. Afterwards the appellee Mrs. Scott conveyed the land to the appellee Salmon. By his bill appellant sought to have said conveyance declared void and canceled, and to redeem the land involved on two grounds: First, because under the power contained in the trust deed the substitution of Magruder in place of Mims, the trustee named therein, was unauthorized and void; and, second, because said substituted trustee advertised said sale more than three weeks next preceding the date on which it was made; and in a manner calculated to mislead prospective bidders. We will consider these propositions in the order named.

The power contained in the trust deed in question providing for the substitution of a trustee is in this language:

"If from any cause R. K. Mims, the trustee above named, or any succeeding trustee, should fail or refuse to act as such when thereto requested, that then and in that event that party of the third part, or the legal holder of the notes herein secured, shall have the right to appoint in writing another person in the place and stead of the said R. K. Mims, or of any succeeding or substituted trustee," etc.

The trustee named in the deed of trust, Mims, died before condition broken. After condition broken, and on the 12th day of March, 1915, the appellee, Mrs. Scott, by her deed substituted J. D. Magruder in the place of said Mims, reciting in such deed, as the reason therefor, "the said R. K. Mims not being able and willing to execute said trust."    ·

It is contended on behalf of the appellant that the decree of the court below must be reversed on the authority of *Guion* v. *Pickett,* 42 Miss. 77, and authorities from other states along the same line. In the Guion case at the time of the foreclosure of the trust deed involved the trustee therein named, as here, had died, and the foreclosure took place through a substituted trustee. The power of substitution in that deed of trust provided:

"And in case the said trustee shall *neglect or refuse*" [italics ours] "to execute the trust reposed in him, then the said Jane E. Pickett may appoint some other person to execute the said trust, who shall have, and execute, all the powers and duties conferred and imposed by said deed of trust, upon the said Robert A. Clarke, trustee as aforesaid."

The court held the substitution under that power to be void on the ground that a condition had arisen not provided for in the power; that such power of appointment must be strictly construed, using the following language, in part:

"In the construction of powers, the intention of the parties, if compatible with law, governs the court. But that intention is to be collected from the instrument creating the power. And with regard to the appointment of a new trustee, the power authorizing it should express plain-

ly the cases in which a new trustee may be appointed, and
it should embrace *every event* that can render such appoint-
ment necessary—such as the neglect or refusal of the trus-
tee to act, his death, absence from the country, wish to
retire from the office, or incapacity to discharge its duties.
Hill on Trustees, 251. The appointment of a new trustee
under a power cannot properly be made, unless the terms
of the power clearly and distinctly authorize the appoint-
ment in the *particular event* which may have occurred."

It is true, as contended by appellant, that the principle
of strict construction of such a power declared by the
court in that case is in line with the great weight of au-
thority in this country. It will be noted, however, that
the power of substitution in that case provided that it
should only be exercised in the event the trustee named
in the deed of trust *"neglects or refuses."* (Italics ours.)
The court held that the trustee named who had died had
neither neglected nor refused, that a dead man was unable
either to neglect or refuse, and that, therefore, death was
not provided for. We decline to overrule that case, as is
insisted by appellees should be done. But the doctrine of
strict construction was extended by it far enough. We de-
cline to go further. It is therefore a question of the ap-
plication of that principle to the power here involved. The
power of substitution in the present case, in our opinion,
is clearly distinguishable, both in language and in sub-
stance, from the power involved in that case. In this case
it is provided that if the trustee named in the deed of trust
should *"fail or refuse"* (italics ours) "to act as such when
thereto requested," the holder of the note secured should
have the right to substitute another trustee. We think
this is broader than the power involved in the *Guion case,
supra.* "Fail or refuse" is more comprehensive than "ne-
glect or refuse." It cannot be said that one who is dead
*neglects or refuses* to act. He cannot refuse, and we think
it equally clear that he cannot *neglect* to act, because each
of those words carries with it the idea of a living person
able to act, but either refusing or neglecting to act. While

the word "fail," used in the power involved in this case, does not necessarily carry with it the idea that the person who fails is living, "fail" has a very broad meaning. One who is dead has certainly failed so far as doing the things of this life are concerned.

In the argument for the appellee stress is laid on the language in the power "when thereto requested." It is said that a dead man cannot be requested; and that of course is true, but a vain and useless thing is never required.

The other cases in this state relied on by the appellant (*McNeill* v. *Lee,* 79 Miss. 455, 30 So. 821; *Clark* v. *Wilson,* 53 Miss. 128, and *Ready* v. *Hamm,* 46 Miss. 422) merely reaffirm the principle of strict construction laid down in *Guion* v. *Pickett, supra.* The power of substitution involved in neither of those cases was anything like the power involved in the present case. We therefore conclude that the substitution in this case was authorized.

The facts with reference to the other question whether the sale is void on account of the manner of its advertisement are as follows: The substituted trustee, Magruder, first advertised the sale to take place on the 5th day of April, 1915, which appeared in two issues of a weekly newspaper of the county, March 19th and March 26th. Before its appearance in the third issue it was discovered that if the sale took place on the day advertised, the 5th of April, there would result a failure to comply with the statute (section 2772, Code of 1906; section 2276, Hemingway's Code), in that the land would not have been advertised for three consecutive weeks preceding the sale. The trustee then had the day of sale changed in the advertisement to May 5, 1915, and it so appeared in the newspaper in the issues of April 2d, 9th, 16th, 23d, and 30th, five in all; therefore it was advertised more than four weeks next preceding the day of sale; and less than one week elapsed between the last issue of the paper in which said advertisement appeared and the day of sale. It is contended that because the statute required the sale to be

advertised three consecutive weeks preceding the day of sale that advertising for a longer time was unauthorized, and void. We are unable to see the force of this reasoning. It is inconceivable how any harm could have resulted from advertising the land for a longer time than was required, while it is easy to understand how harm might result by advertising for a shorter time than the law requires.

And it is argued that the change of the date of the sale under the circumstances mentioned was calculated to mislead prospective bidders. We think not. If any prospective bidder had read either one or both of the issues of the paper advertising the sale for the 5th of April it might have resulted in such prospective bidder attending at such place and time. And on so appearing and finding that the sale did not take place, he would have been put on inquiry, which would have unerringly resulted, if pursued, in his ascertaining the postponed date of the sale. We do not see how either the grantor in the trust deed, or prospective bidders, or others interested, could have been misled by this change in the advertisement.

*Affirmed.*

Ethridge, J. (dissenting.)  In my opinion this case cannot be distinguished from *Guion* v. *Pickett,* 42 Miss. 77. The doctrine of that case is supported by the great weight of authority and by the text-books. The Texas case of *Jacobs* v. *McClintock,* 53 Tex. 72, relied on by the appellees adopts the contrary theory to that of strict construction of the power to appoint substitute trustees, and is contrary to the great weight of authority:

The clause in the present deed of trust reads as follows:

"If from any cause R. K. Mims, the trustee above named, or any succeeding trustee, should fail or refuse to act as such when thereto requested, that then and in that event the party of the third part, or the legal holder of the notes herein secured, shall have the right to appoint in writing

anoher person in the place and stead of the said R. K. Mims, or of any succeeding or substituted trustee," etc.

It will be noted from this provision that the power of the beneficiary in the deed of trust to appoint a substituted trustee depended upon the failure or refusal of Mims to act as such trustee *when thereto requested.* He could not fail or refuse until the request for him to act had been first made. He had no power to act on his own initiative even though the debt might be past due and unpaid. He must act upon the request of the beneficiary and the right of the beneficiary to name a trustee, instead of one named by agreement of the parties, could not arise until a request had been made of Mims and Mims had failed or refused to act after such request. When Mims died before the maturity of the indebtedness he ceased to be a person, and no request could be made of him, and he could not fail to act in the sense of the instrument, because he was incapable of doing anything. In such case the instrument could not be executed *in pais* without the parties either agreeing upon a trustee, or, in case of disagreement, have one appointed by the chancery court. Each party has an equal right in the selection of the trustee unless they have already waived such right by contract, and the doctrine of strict construction will prevent one of the parties appointing a trustee without the consent of the other, unless the power, *strictly construed, authorized him to do so,* which clearly is not the case in this case. It was therefore error for the court to uphold the sale by the substituted trustee.

The CHIEF JUSTICE concurs in this dissent.